Jason Wilson, Pro Per
710 Lincoln Ave
Alameda, CA 94501
(415)696-1856
Jason.wilson@theislandpersonaltraining.com

FILED

JUN 02 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5
Summons Issued

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JASON WILSON

        Plaintiff,

vs.

ALAMEDA COUNTY, DDA LAURA
ANDERSON; individually and in her
official capacity, DDA MICHIYE VELLA;
individually and in her official capacity,
and DOES 1-10,

        Defendants.

No: **CV26 05248**

UNLIMITED CIVIL CASE

COMPLAINT

SK

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

(42 U.S.C. § 1983)

**INTRODUCTION**

Representatives of Alameda County told a member of Plaintiff's legal team that the office has "problems with their witness," that they do not want her "to go to the press," and that they do not want to "turn real victims away." Those statements were made about Rebecca Blakesley, the

COMPLAINT
- 1 -

complaining witness in People v. Wilson, Case No. 23-CR-005916. Blakesley has given multiple inconsistent accounts of the alleged events, including a version given under oath on April 25, 2024 that Plaintiff has evidence was false. Defendants received documentary proof of that discrepancy on or about August 6, 2024 but failed to correct the testimony or disclose the material to the defense. After Plaintiff filed a civil complaint on January 15, 2026, (Case No. 26CV164816) exposing coordinated false statements, doxing, and witness collusion, DDA Michiye Vella and other employees of Alameda County retaliated by filing two separate applications for Criminal Protective Orders against him. Both applications were denied. This action seeks damages, declaratory relief, and narrowly tailored injunctive relief under 42 U.S.C. § 1983 for violations of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

## I. JURISDICTION AND VENUE

1. This action arises under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

2. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Alameda County, California, within the Northern District of California.

## II. PARTIES

4. Plaintiff Jason Wilson is a resident of Alameda, California, and the owner and operator of The Island Personal Training, 710 Lincoln Avenue, Alameda, California 94501.

COMPLAINT
- 2 -

5. Defendant Alameda County is a municipal entity organized under California law, responsible for the policies, customs, training, and supervision of the Alameda County District Attorney's Office and its personnel.

6. Defendant DDA Laura Anderson is a prosecutor employed by the Alameda County District Attorney's Office. In November 2023, DDA Anderson conducted an investigative interview of Rebecca Blakesley in which Blakesley provided a fourth account of the alleged events; an account that included, for the first time, an allegation of oral copulation. Additional charges based on that account were subsequently filed in Case No. 23-CR-005916. DDA Anderson bore primary responsibility for the disclosure obligations arising during the investigative phase of the prosecution, including the receipt of Fasoli's February 27, 2025 coordination email. At all relevant times, DDA Anderson acted under color of state law. She is sued in her individual and official capacities.

7. Defendant DDA Michiye Vella is a prosecutor employed by the Alameda County District Attorney's Office. DDA Vella assumed primary trial responsibility for People v. Wilson, Case No. 23-CR-005916, conducted the investigative interview of witness Alyssa Berry, and sought Criminal Protective Orders against Plaintiff on two occasions following his filing of civil complaint Case No. 26CV164816. At all relevant times, DDA Vella acted under color of state law. She is sued in her individual and official capacities.

8. Defendants Does 1-10 are individuals acting under color of state law whose identities are not yet fully ascertained. Plaintiff will amend this Complaint to identify them when ascertained.

### III. FACTUAL ALLEGATIONS

## A. Arrest and Original Charges

9. On June 19, 2023, Plaintiff was arrested at The Island Personal Training, 710 Lincoln Avenue, Alameda, California, based on allegations by Rebecca Blakesley. Blakesley appears as Jane Doe in law enforcement records consistent with her enrollment in California's Safe at Home address confidentiality program (Alameda Police Department Report No. 23-04045). The charges were: 207(A) PC (Kidnapping); 273.5(A) PC (DV Battery — Aggravated); 243(D) PC (Battery with serious bodily injury); 236 PC (False Imprisonment); 422(A) PC (Criminal threats); and 135 PC (Destroy/conceal evidence). The case is assigned Alameda County Case No. 23-CR-005916. Trial is currently scheduled for approximately June 22, 2026. Plaintiff denies all charges.

## B. Blakesley's Prior Allegations in Massachusetts and Victim Compensation Payments

10. Prior to her allegations against Plaintiff, Blakesley made almost identical allegations of domestic violence against her former husband, Andrew Blakesley, in Massachusetts. Those allegations resulted in Andrew Blakesley's prosecution. Following that prosecution, Blakesley received victim's compensation fund payments from the State of Massachusetts for approximately two years then lied about it under oath in Case No. 23-CR-005916.

11. This prior history of allegations against a prior intimate partner, resulting in prosecution and victim compensation payments in another jurisdiction, is material impeachment evidence bearing on Blakesley's motive and credibility. Defendants have not disclosed this history to the defense.

12. Blakesley is enrolled in California's Safe at Home address confidentiality program, which provides her Jane Doe status in court proceedings. That enrollment, and the financial and legal benefits of sustained victim status under the program, constitute a financial interest bearing on Blakesley's motive to maintain her allegations. This information has not been disclosed as Brady material.

**C. Blakesley's Mental Health History Disclosed to the DA's Office**

13. During the period of their relationship, Blakesley told Plaintiff that she had been diagnosed with borderline personality disorder, severe post-traumatic stress disorder, and traumatic brain injury. Plaintiff disclosed this information to the Alameda County District Attorney's Office. Plaintiff informed the DA's Office that he believes these conditions may bear on the witness's reliability and perception of events.

14. The DA's Office had actual notice of Blakesley's diagnoses and has not produced this mental health history as Brady or Giglio material.

**D. Blakesley's Litigation History**

15. Blakesley currently has or recently had active legal proceedings against: (a) her ex-husband Andrew Blakesley (in which she used similar allegations against him as she now employs against Plaintiff Jason Wilson); (b) Jason Wilson (a civil action against current Plaintiff herein); (c) the mother and sister of her ex-husband Andrew Blakesley; (d) a former employer in San Francisco; and (e) multiple insurance companies, initiated after Andrew Blakesley reported conduct by Blakesley to the Massachusetts Board of Nursing. This litigation history is relevant to Blakesley's character for truthfulness under Giglio and has not been disclosed to the defense.

COMPLAINT

- 5 -

**E. Blakesley's Statements Across Proceedings**

16. Blakesley provided accounts of the alleged events in the following proceedings, each of which differed in scope and detail from the prior account:

17. (1) An initial hospital interview conducted on or about June 18, 2023.

18. (2) A police interview conducted shortly after the arrest, the transcript of which is in evidence.

19. (3) A civil complaint filed by Blakesley against Plaintiff, in which she described the alleged events in a structured legal format.

20. (4) An investigative interview conducted by DDA Laura Anderson in November 2023, approximately five months after the original arrest. In that interview, Blakesley described an oral copulation incident that had not appeared in any prior account. No new physical evidence, medical record, or independent witness corroboration accompanied this new allegation.

21. (5) Pretrial testimony on April 25, 2024, at which Blakesley provided her fifth account of the alleged events.

22. Defendants possessed all prior accounts at every stage of the prosecution. Following Blakesley's November 2023 interview with DDA Anderson, additional charges based on that interview were filed in Case No. 23-CR-005916.

**F. Blakesley's April 25, 2024 Testimony and Subsequent Disclosure**

23. During pretrial proceedings on April 25, 2024, Blakesley was asked whether the State of Massachusetts had ever paid her rent. She testified that it had not.

COMPLAINT
- 6 -

24. Plaintiff possesses written communications in which Blakesley stated that Massachusetts victim's compensation programs were paying her housing costs. Those communications predate her April 25, 2024 testimony.

25. On August 6, 2024, Plaintiff's counsel provided Defendants with those written communications. Defendants did not address the discrepancy between Blakesley's testimony and the written communications, and did not disclose the communications to the defense.

## G. Communications from the DA's Office

26. In the course of this prosecution, a member of Plaintiff's legal team received communications from representatives of Alameda County stating: (a) that the DA's office has "problems with their witness"; (b) that the DA's office does not want Blakesley "to go to the press"; and (c) that the DA's office does not want to "turn real victims away." These communications were received after Defendants were provided with the written communications described in paragraph 26.

## H. Federal Funding

27. Alameda County receives federal funding through the Violence Against Women Act (VAWA), Title IV of the Violent Crime Control and Law Enforcement Act, and related federal domestic violence prosecution programs. Those funding streams are tied in part to domestic violence prosecution activity and programmatic metrics.

## I. Statements of Designated 1108/1109 Witnesses

28. Each of the three witnesses designated by the DA's office as Evidence Code sections 1108 and 1109 witnesses in Case No. 23-CR-005916 — Erin Harte, Kristine Fasoli, and

Alyssa Berry — made statements on the record acknowledging contact and communication with each other and with Blakesley before and during this prosecution:

29. (a) Kristine Fasoli stated that Blakesley contacted her through Facebook and that she and Blakesley communicated regularly about their respective experiences with Plaintiff. On February 27, 2025, Fasoli sent an email to the DA's office in which she described that contact.

30. (b) Erin Harte stated that she contacted Kristine Fasoli through Instagram and that she and Fasoli communicated regularly and shared accounts of their experiences with Plaintiff.

31. (c) Alyssa Berry has since admitted, through counsel in the civil action, that she posted information about Plaintiff on the social media group "Are We Dating the Same Guy."

32. Defendants received Plaintiff's civil complaint and its exhibits, which documented the foregoing communications, before DDA Vella sought Criminal Protective Orders against Plaintiff. The communications described in paragraphs 31 through 33 have not been disclosed as Brady material.

**J. Harte's Prior Criminal History**

33. Erin Harte has a prior arrest record including an arrest on July 2, 2003, for violation of Penal Code section 273.5(a).

**K. Witness Financial Interest**

34. Kristine Fasoli is a defendant in a civil action filed by Plaintiff in Shasta County, Case No. 201520, involving a property and financial dispute. Plaintiff presented evidence of

COMPLAINT

- 8 -

inconsistencies in Fasoli's statements to the DA's office. Defendants have not disclosed Fasoli's financial interest in the outcome of Case No. 23-CR-005916 as Brady material.

**L. DDA Vella's Investigative Interview of Berry**

35. DDA Vella conducted an investigative interview of Alyssa Berry. The account Berry provided in that interview differed in several respects from her prior April 21, 2025 statement and from the December 1, 2025 report prepared by Inspector Chang. DDA Vella subsequently assumed primary trial responsibility for Case No. 23-CR-005916.

**M. Plaintiff's Civil Complaint and CPO Applications**

36. On January 15, 2026, Plaintiff filed a civil complaint in Alameda County Superior Court, Case No. 26CV164816, against Erin Harte, Alyssa Berry, Kristine Fasoli, Dom Fasoli, and Does 1-10. The filing of a civil complaint constitutes protected petitioning activity under the First Amendment. See California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972).

37. After receiving Plaintiff's civil complaint and its exhibits – which contained substantial evidence that the three designated 1108/1109 witnesses had coordinated their statements and made materially false statements - DDA Vella, after acknowledging she had read the complaint and its exhibits, filed two separate applications for Criminal Protective Orders against Plaintiff. Both applications were denied.

**N. Harte's Restraining Order Petition**

38. Witness Erin Harte filed a Domestic Violence Restraining Order petition against Plaintiff in Alameda County Case No. 26FL167811 after Plaintiff filed Case No. 26CV164816.

On March 26, 2026, the Honorable Brian Caruth denied the petition after Harte testified under oath, finding insufficient basis to grant the order.

**O. Unconstitutionality and Discriminatory Application of Evidence Code Sections 1108 and 1109**

39. Plaintiff alleges that California Evidence Code §§ 1108 and 1109 are unconstitutional and violate the Due Process Clause of the Fourteenth Amendment. These statutes permit the introduction of unreliable propensity evidence and significantly increase the risk of wrongful convictions by lowering the effective burden of proof.

40. In this case, the Alameda County District Attorney's Office, along with DDAs Laura Anderson and Michiye Vella, used Evidence Code §§ 1108 and 1109 to introduce and bolster the testimony of Rebecca Blakesley after Plaintiff provided them with evidence that she gave false testimony under oath regarding victim compensation payments from Massachusetts. Defendants failed to correct the false testimony, in violation of Napue v. Illinois and the Due Process Clause.

41. Additionally, Plaintiff is informed and believes, and thereon alleges, that it is the policy and practice of Alameda County, and of DDAs Anderson and Vella, to apply Evidence Code §§ 1108 and 1109 in a sexually discriminatory manner, disproportionately targeting male defendants. Plaintiff's CPRA requests seeking data on the application of these statutes have been improperly denied or stonewalled, further supporting this belief.

**P. Municipal Policy, Custom, and Failure to Train**

42. Defendant Alameda County, through the DA's office, maintained the following policies, customs, or failures to train that caused the constitutional violations described herein:

COMPLAINT

- 10 -

43. (a) A custom of failing to disclose, as Brady or Giglio material, a complaining witness's mental health history bearing on testimonial reliability, prior allegations against other partners, victim compensation payment history, litigation history, and witness coordination evidence — as demonstrated by the failures described in this Complaint.

44. (b) A failure to train prosecutors on the obligation to investigate and disclose, as Brady material, a complaining witness's mental health history, prior allegations across jurisdictions, victim compensation histories, and witness coordination evidence, even where such information has been disclosed to or obtained by the DA's office.

45. (c) It is the policy and custom of Alameda County to use Evidence Code §§ 1108 and 1109 to bolster and rehabilitate witnesses known to have given false or unreliable testimony. Plaintiff is further informed and believes that both DDA Michiye Vella and DDA Laura Anderson are the Office's designated 1108/1109 specialists who are routinely assigned to cases for this specific purpose. This practice is applied disproportionately against male defendants. The Office's pursuit of domestic violence prosecutions is also influenced by VAWA and related federal funding metrics, which has contributed to the continuation of this prosecution despite the known issues with its witnesses.

46. (d) A custom of invoking Evidence Code sections 1108 and 1109 in a manner that is disproportionate as between male and female defendants, as described in paragraph 41.

47. Each of the foregoing was a moving force behind the constitutional violations described herein.

## IV. APPLICABILITY OF YOUNGER V. HARRIS

COMPLAINT

- 11 -

48. The Younger v. Harris, 401 U.S. 37 (1971), abstention doctrine ordinarily counsels federal courts to refrain from enjoining pending state criminal proceedings. Younger abstention does not apply where the plaintiff demonstrates bad faith, harassment, or other extraordinary circumstances. Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69 (2013); Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982).

49. Plaintiff alleges the following facts in support of the bad faith exception to Younger abstention, subject to development through discovery: Defendants received the written communications described in paragraph 27 on August 6, 2024 and did not address the discrepancy with Blakesley's testimony; representatives of the DA's office communicated to Plaintiff's legal team that they have problems with their witness; Defendants possessed but did not disclose Blakesley's mental health history, her prior Massachusetts allegations and victim compensation history, and the witness communications described in paragraphs 31 through 33; and the DA's office receives federal domestic violence funding tied in part to prosecution metrics.

50. In support of the harassment exception, Plaintiff alleges the following facts: Shortly after Plaintiff filed a civil complaint exposing serious misconduct by witnesses the DA's office was using in the criminal case, DDA Vella filed two separate applications for Criminal Protective Orders against Plaintiff. Both applications were denied by the court. Witness Erin Harte also filed a Domestic Violence Restraining Order petition against Plaintiff after he filed the civil action. That petition was denied on March 26, 2026, after Harte testified under oath and the court found insufficient basis to grant the order.

51. Plaintiff's claims for compensatory and punitive damages do not require injunctive interference with the state criminal proceedings and are cognizable regardless of

Younger. The narrowly tailored injunctive relief sought — immediate disclosure of Brady and Giglio material prior to trial — does not require this Court to halt or supervise the state prosecution.

**Prosecutorial Immunity**

52. Defendants Laura Anderson and Michiye Vella are not entitled to absolute prosecutorial immunity for the conduct at issue in this complaint.

53. DDA Anderson engaged in investigative, rather than advocative, functions when she personally contacted witness Alyssa Berry by phone in April 2025 and arranged to interview her. Such conduct constitutes police-type investigative work, not advocacy on behalf of the state.

54. Additionally, DDA Vella's filing of two separate Criminal Protective Order applications against Plaintiff — immediately after he filed his civil lawsuit — constitutes an administrative act, not an act intimately associated with the judicial phase of the criminal process.

55. Because these actions were taken in investigative and/or administrative capacities, Defendants are not entitled to absolute immunity and are only entitled to, at most, qualified immunity.

**Heck v. Humphrey**

56. Plaintiff has not been convicted. Heck v. Humphrey, 512 U.S. 477 (1994), does not bar pre-conviction claims under § 1983. Wallace v. Kato, 549 U.S. 384 (2007).

## V. CLAIMS FOR RELIEF

### COUNT I

*42 U.S.C. § 1983 — Fourteenth Amendment Due Process*

*Failure to Correct Known False Testimony (Napue)*

(Against All Defendants)

57. Plaintiff realleges and incorporates paragraphs 1 through 57.

58. During pretrial proceedings on April 25, 2024, Blakesley testified that Massachusetts had not paid her rent. On August 6, 2024, Defendants received written communications from Blakesley in which she stated that Massachusetts programs were paying her housing costs. Defendants did not correct Blakesley's testimony and continued to rely on her in subsequent proceedings. A prosecutor's knowing failure to correct testimony it knows to be false violates the due process guarantee of the Fourteenth Amendment. This constitutional obligation was clearly established well before the conduct alleged herein. No qualified immunity defense is available to DDA Anderson or DDA Vella on these facts.

### COUNT II

*42 U.S.C. § 1983 — Fourteenth Amendment Due Process*

*Suppression of Material Impeachment Evidence (Brady/Giglio)*

(Against All Defendants)

59. Plaintiff realleges and incorporates paragraphs 1 through 59.

COMPLAINT
- 14 -

60. Defendants possessed and failed to disclose the following categories of material impeachment evidence, each favorable to Plaintiff and material to the outcome of these proceedings: (a) Blakesley's accounts across the proceedings described in paragraphs 19 through 23, which differed in scope and detail from each other; (b) Blakesley's BPD, PTSD, and TBI diagnoses, disclosed to the DA's office and not produced to the defense; (c) Blakesley's prior allegations against Andrew Blakesley in Massachusetts, the resulting prosecution, and her two years of victim compensation payments;

(d) Blakesley's written communications to Plaintiff described in paragraph 26, which predate and differ from her April 25, 2024 testimony; (e) Blakesley's litigation history described in paragraph 17; (f) Blakesley's Safe at Home enrollment and associated financial interests; and (g) the witness communications and coordination described in paragraphs 31 through 33. Their suppression violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment.

## COUNT III

*42 U.S.C. § 1983 — Municipal Liability*

*Policy, Custom, and Failure to Train (Monell)*

(Against Defendant Alameda County)

61. Plaintiff realleges and incorporates paragraphs 1 through 61.

62. Defendant Alameda County maintained the policies, customs, and failures to train described in paragraphs 43 through 47. Each was a moving force behind the constitutional violations described in Counts I, II, and III.

## COUNT IV

COMPLAINT

- 15 -

*42 U.S.C. § 1983 — Equal Protection*

*Discriminatory Enforcement of Evidence Code Sections 1108 and 1109*

(Against Defendant Alameda County)

63. Plaintiff realleges and incorporates paragraphs 1 through 63.

64. Alameda County has a policy, custom, and practice of selectively and disproportionately invoking Evidence Code §§ 1108 and 1109 against male defendants in domestic violence cases, while rarely or never invoking comparable propensity evidence against female defendants in similar situations. This discriminatory enforcement occurs while the office accepts federal funding through the Violence Against Women Act (VAWA) and related domestic violence grant programs tied to prosecution metrics and outcomes. By doing so, Defendants have violated Plaintiff's right to equal protection under the Fourteenth Amendment.

## COUNT V

*42 U.S.C. § 1983 First Amendment Retaliation / Abuse of Process*

(Against Defendants Michiye Vella and Alameda County)

65. Plaintiff realleges and incorporates paragraphs 1 through 65.

66. After Plaintiff exercised his First Amendment right to petition the courts by filing a civil complaint against Erin Harte, Alyssa Berry, Kristine Fasoli, and others (Case No. 26CV164816), Defendant DDA Michiye Vella immediately filed two separate applications for Criminal Protective Orders against Plaintiff. Both applications were denied by the court.

67. These protective order applications were not filed for any legitimate law enforcement purpose. Instead, they were filed for the improper purpose of intimidating Plaintiff, restricting his ability to pursue protected civil litigation, and retaliating against him for filing suit against witnesses the DA's office was actively using in a criminal case.

68. This conduct constitutes both First Amendment retaliation and abuse of process.

## COUNT VI

*State Law — Civil Conspiracy*

(Against All Defendants)

69. Plaintiff realleges and incorporates paragraphs 1 through 69.

70. After Plaintiff filed his civil complaint in Case No. 26CV164816 - which contained substantial evidence of material false statements, inconsistencies, public doxing of Plaintiff, and coordination among Rebecca Blakesley and the designated 1108/1109 witnesses - Defendants Laura Anderson and Michiye Vella reviewed the complaint and its exhibits.

71. Rather than take corrective action or disclose the newly revealed impeachment evidence, Defendants Anderson and Vella, acting in concert with witnesses Blakesley, Harte, Fasoli, and Berry, agreed to continue the prosecution using known problematic testimony.

72. This agreement between the prosecutors and the witnesses to continue the prosecution despite knowledge of serious credibility problems with their key witnesses constitutes a civil conspiracy under California law. As a direct and proximate result of this conspiracy, Plaintiff

COMPLAINT

- 17 -

has suffered and continues to suffer deprivation of liberty, reputational harm, economic loss, and emotional distress.

## VI. DAMAGES

73. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered: (a) restriction of liberty through the ongoing criminal prosecution; (b) harm to The Island Personal Training, including loss of clients, revenue, and professional reputation; (c) reputational harm; (d) emotional distress; and (e) legal expenses.

74. Plaintiff continues to suffer harm as a result of Defendants' conduct. The harm is not fully compensable by money damages alone.

75. DDA Laura Anderson and DDA Michiye Vella each acted in their individual capacities with knowledge of the clearly established constitutional obligations described herein. Punitive damages are warranted against each of them individually.

## VII. RESERVATION OF RIGHTS

76. Plaintiff reserves the right to amend this Complaint to add claims including malicious prosecution and selective prosecution as those claims become ripe, and to identify additional Defendants as their identities become known through discovery.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jason Wilson respectfully requests that this Court:

1. Award compensatory damages against all Defendants, jointly and severally;

COMPLAINT
- 18 -

2.  Award punitive damages against DDA Laura Anderson and DDA Michiye Vella in their individual capacities;

3.  Enter a declaratory judgment that Defendants' conduct violated Plaintiff's rights under the First and Fourteenth Amendments;

4.  Enter narrowly tailored injunctive relief requiring Defendants to disclose, prior to trial, all Brady and Giglio material not yet produced, including all internal memoranda, emails, notes, or communications within Alameda County that reference or discuss Rebecca Blakesley's credibility, inconsistencies, or reliability as a witness;

5.  Award costs of suit and reasonable attorney's fees under 42 U.S.C. § 1988; and

6.  Grant such other and further relief as the Court deems just and proper.

_____

## JURY DEMAND

Plaintiff Jason Wilson demands a trial by jury on all issues so triable.

DATED: ___June 2, 2026___

Respectfully submitted,

COMPLAINT
- 19 -

**Jason Wilson**

Plaintiff, Pro Se

710 Lincoln Avenue

Alameda, California 94501

(415) 696-1856

Jason.wilson@theislandpersonaltraining.com

COMPLAINT
- 20 -